897 P.2d 973

**STATE of Hawai'i, Respondent–
Appellant,**

v.

**Thomas K. KINNANE, Petitioner–
Appellant.**

**No. 15713.**

Supreme Court of Hawai'i.

June 15, 1995.

Edward K. Harada, Deputy Public Defender, on the briefs, Honolulu, for petitioner-appellant Thomas K. Kinnane.

State of Hawai'i, respondent-appellant, did not file a supplemental brief.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The petitioner-appellant Thomas K. Kinnane appeals from the judgment, guilty conviction, and probation sentence of the first circuit court, filed on October 24, 1991, adjudging him guilty of the offenses of attempted sexual assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) §§ 705–500 (1985)[1] and 707–731(1)(a) (Supp. 1992)[2] (Count I), and sexual assault in the

fourth degree, in violation of HRS § 707–733(1)(a) (Supp.1992)[3] (Count II). We assigned the appeal to the Intermediate Court of Appeals (ICA). Because the ICA deemed all of Kinnane's points of error on appeal to be without merit, it affirmed Kinnane's convictions in a memorandum opinion filed on October 6, 1992. *State v. Kinnane*, 9 Haw. App. 654, 840 P.2d 382 (1992) (mem. op.) (hereinafter "ICA's decision"). We granted Kinnane's application for a writ of certiorari to review the ICA's decision.

Although Kinnane alleges five defects in the ICA's decision, we choose to address only one. Because, in connection with the charge of attempted sexual assault in the second degree, we hold that the circuit court erred in refusing to instruct the jury regarding the

---

1. HRS § 705–500 (1985) provides:

   **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if [the person]:
   (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as [the person] believes them to be; or
   (b) Intentionally engages in conduct which, under the circumstances as [the person] believes them to be, constitutes a substantial step in a course of conduct intended to culminate in [the person's] commission of the crime.
   (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, [the person] intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
   (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

   HRS § 705–502 (1985), entitled "Grading of criminal attempt," provides that "[a]n attempt to commit a crime is an offense of the same class and grade as the most serious offense which is attempted."

2. HRS § 707–731 (Supp.1992) provides in relevant part:

   **Sexual assault in the second degree.** (1) A person commits the offense of sexual assault in the second degree if:
   (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]
   . . . .

(2) Sexual assault in the second degree is a class B felony.

HRS § 707–700 (Supp.1992) defines "sexual penetration" in relevant part to mean "any intrusion of any part of a person's body . . . into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. For purposes of this chapter, each act of sexual penetration shall constitute a separate offense." The same section defines "compulsion" in relevant part to mean "absence of consent."

In response to a motion for bill of particulars filed by Kinnane, the State (prosecution) represented that the act complained of in Count I was Kinnane's attempt to insert his fingers into the complainant's vagina.

3. HRS § 707–733 (Supp.1992) provides in relevant part:

   **Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
   (a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]
   . . . .
   (2) Sexual assault in the fourth degree is a misdemeanor.

   The legislature amended HRS §§ 707–733(1)(b) and (c) and 707–733(3) in 1991, after the events before us in the present appeal occurred. 1991 Haw.Sess.L. Act 214, § 1 at 498–99. The amendments are not material to our analysis.

   HRS § 707–700 defines "sexual contact" to mean "any touching of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."

included offenses of sexual assault in the fourth degree and attempted sexual assault in the fourth degree, we vacate Kinnane's conviction of the offense of attempted sexual assault in the second degree and remand the matter to the circuit court for further proceedings consistent with this opinion. In all other respects, we affirm the ICA's decision.

## I. BACKGROUND

At trial, the complainant testified that, after going out on a date on the night of September 17, 1990, she returned to the apartment that she shared with Trent Johnson. Kinnane, a friend of Johnson's, was present in the apartment at the time. After a few minutes, the complainant proceeded to her bedroom and dressed for bed in a nightshirt and panties. Because it was a very warm night, the complainant left the door to her room ajar for cross-ventilation and then fell asleep. Sometime thereafter, the complainant was awakened to discover Kinnane kneeling over her; she felt Kinnane's penis on her stomach and one of his hands inside her panties. The complainant ordered Kinnane out of her room, and Kinnane gathered his clothes and exited, licking the fingers of his left hand. The next day, the complainant reported the incident to the police and to the Sex Abuse Treatment Center (SATC), where a physician performed a pelvic examination.[4]

By contrast, Kinnane testified that he had entered the complainant's bedroom after becoming sexually aroused by noises that caused him to believe that the complainant was masturbating. When he looked into the complainant's bedroom, she was indeed masturbating and fondling her left breast. Kinnane then entered the room and kissed the complainant's stomach. The complainant requested that Kinnane leave, and he complied. According to Kinnane, the complainant smiled and licked the fingers of her left hand. Kinnane acknowledged in his testimony that he wanted to have sex with the complainant, but only if she was willing. Kinnane denied touching the complainant either with his pe-

nis or his hand, although he admitted kissing her stomach.

During settlement of jury instructions, the deputy public defender (DPD) representing Kinnane requested that the trial court give Defendant's Supplemental Jury Instruction No. 12, which provided:

If you are unable to reach a unanimous verdict as to the offense of (Attempted) Sexual Assault in the Second Degree, then you may consider whether the prosecution has proven the offense of (Attempted) Sexual Assault in the Fourth Degree.

A person commits the offense of (Attempted) Sexual Assault in the Fourth Degree if he knowingly subjects another person to sexual contact by compulsion.

There are three elements to the offense of (Attempted) Sexual Assault in the Fourth Degree, each of which must be proven beyond a reasonable doubt. These elements are:

1. That Thomas Kinnane subjected [the complainant] to an act of sexual contact;

2. That the act of sexual contact by Thomas Kinnane upon [the complainant] was done so by compulsion; and

3. That the act of sexual contact by Thomas Kinnane upon [the complainant] was done knowingly[.]

If the prosecution has proven, beyond a reasonable doubt, all three of the elements of (Attempted) Sexual Assault in the Fourth Degree, then you must find Thomas Kinnane guilty of the offense of (Attempted) Sexual Assault in the Fourth Degree. However, if the prosecution has not proven, beyond a reasonable doubt, every element of the offense of (Attempted) Sexual Assault in the Fourth Degree, then you must find Thomas Kinnane not guilty of the offense of (Attempted) Sexual Assault in the Fourth Degree.

(Parentheses in original and bracketed material supplied).[5] The DPD urged the supplemental instruction on the basis that

---

4. Although the complainant believed that, after the incident in question, her vulva was bruised and sticky, David Paperny, M.D., who performed the pelvic examination at the SATC, was unable to detect any bruising or seminal fluid on the complainant's body.

5. We recognize that Defendant's Supplemental Jury Instruction No. 12 was not a paragon of

this is a lesser included offense. *It has the same state of mind. The element of compulsion is the same. The only difference, I guess, is the degree to which there is contact.* Based upon that, Your Honor, since it is a lesser form of contact, we believe that sex assault four is a lesser included offense to sex assault second degree. In addition to—oh, in addition to what was already proffered ..., Defendant's Supplemental 12, I ask the Court to also modify such that the attempt element, the law is incorporated into this instruction.

(Emphasis added.)

Over Kinnane's objection, the trial court refused Defendant's Supplemental Jury Instruction No. 12 pursuant to the rationale that "the sexual attempt in the second degree speaks about sexual penetration by compulsion; whereas, the instruction for attempted sexual assault in the fourth degree speaks about sexual contact. So as far as the states of mind, there are two different states of mind with regard to the offenses."

Kinnane timely appealed his convictions, urging, *inter alia*, that the trial court erred by denying his request for a jury instruction on an included offense.

II. *THERE WAS A RATIONAL BASIS IN THE EVIDENCE FOR A VERDICT ACQUITTING KINNANE OF THE CHARGED OFFENSE OF ATTEMPTED SEXUAL ASSAULT IN THE SECOND DEGREE AND CONVICTING HIM OF THE INCLUDED OFFENSES OF SEXUAL ASSAULT IN THE FOURTH DEGREE AND ATTEMPTED SEXUAL ASSAULT IN THE FOURTH DEGREE.*

A. *Standard of Review*

■ "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially *insufficient*, erroneous, inconsistent, or misleading." *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74

(1993) (citations omitted) (emphasis added). *See also State v. Hoey*, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994); *State v. Horswill*, 75 Haw. 152, 155, 857 P.2d 579, 581 (1993); *State v. Lee*, 75 Haw. 80, 112, 856 P.2d 1246, 1263 (1993).

B. *General Entitlement To Included Offense Instructions*

■ "[W]hen a defendant in a criminal case timely asks for a lesser included offense instruction to which he [or she] is entitled, it is reversible error not to give it." *State v. Williams*, 6 Haw.App. 17, 18, 708 P.2d 834, 835 (1985) (citing 2 Wright, *Federal Procedure and Practice: Criminal 2d* § 498 (1982)). On the other hand, "a trial court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. HRS § 701–109(5) (1985)." *State v. Kupau*, 76 Hawai'i 387, 390, 879 P.2d 492, 495 (1994) (citation and internal quotation marks omitted).

■ Indeed, in the absence of such a rational basis in the evidence, the trial court *should not* instruct the jury as to included offenses. *See generally State v. Sneed*, 68 Haw. 463, 718 P.2d 280 (1986). *A fortiori*, it is not error for a trial court to refuse—and the trial court should refrain from giving—an instruction regarding an uncharged offense that is not "included," for purposes of the Hawai'i Penal Code, within the charged offense. *See generally State v. Pukahi*, 70 Haw. 456, 776 P.2d 392 (1989); *State v. Freeman*, 70 Haw. 434, 774 P.2d 888 (1989); *State v. Burdett*, 70 Haw. 85, 762 P.2d 164 (1988); *State v. Woicek*, 63 Haw. 548, 632 P.2d 654 (1981); *State v. Kupau*, 63 Haw. 1, 620 P.2d 250 (1980); *State v. Rullman*, 78 Hawai'i 488, 896 P.2d 944 (App.1995); *State v. Doi*, 6 Haw.App. 115, 711 P.2d 736, *cert. denied*, 68 Haw. 692 (1985).

---

draftsmanship. We also note that the instruction originally sought to describe the offense of sexual assault in the fourth degree and that the refer-

ences to the element of attempt were interlineated by hand into the typewritten submission.

Where there *is* such a rational basis in the evidence, however, we have held that it may be plain error [6] for a trial court to fail to give an included offense instruction even when neither the prosecution nor the defendant have requested it; [7] this is because

the trial court is the *sole source* of all definitions and statements of law applicable to an issue to be resolved by the jury. Moreover, it is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts. And faced with inaccurate or incomplete instructions, the *trial court has a duty to,* with the aid of counsel, either correct the defective instructions or to otherwise *incorporate it into its own instructions.* In other words, the ultimate responsibility properly to instruct the jury lies with the circuit court and *not* with trial counsel.

. . . .

Thus, in order to reconcile the competing interests of the prosecution and defendants, as well as to ensure that juries are appropriately instructed in criminal cases, we hold as follows: The trial judge must bring all included offense instructions that are supported by the evidence to the attention of the parties. The trial judge must then give each such instruction to the jury unless (1) the prosecution does not request that included instructions be given and (2) the defendant specifically objects to the included offense instructions for tactical reasons. If the prosecution does not make a request and the defendant makes a tactical objection, the trial judge must then exercise his or her discretion as to whether the included offense instructions should be given. The trial judge's discretion should be guided by the nature of the evidence presented during the trial, as well as the extent to which the defendant appears to understand the risks involved.

*Kupau,* 76 Hawai'i at 394–96, 879 P.2d at 499–501 (citations, footnotes, internal quotation marks, and brackets omitted) (emphases in original).

### C. *HRS § 701–109(4) And The Included Offense Paradigm*

In *State v. Alston,* 75 Haw. 517, 865 P.2d 157 (1994), this court recently summarized the law in Hawai'i applicable to the issue of what constitutes an included offense. We began our analysis by citing *Burdett,* 70 Haw. at 87, 762 P.2d at 165, for the general proposition that "an offense is a lesser included offense of another if it satisfies the requirements set forth in HRS § 701–109(4) which codifies the common law doctrine of lesser included offenses." *Alston,* 75 Haw. at 532–33, 865 P.2d at 166 (brackets and internal quotation marks omitted).

HRS § 701–109 (1985), which, as indicated, is the statutory basis of the *Alston* assessment, provides in relevant part:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He [or she] may not, however, be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (4) of this section[.]

. . . .

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an

---

**6.** Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1994) provides that "[p]lain errors or defects affecting substantial rights may be noticed although not brought to the attention of the court."

**7.** The holding applies *a fortiori* when a requested jury instruction is inartfully, inaccurately, or otherwise defectively worded.

offense otherwise included therein;[8] or

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

In *Alston*, we construed HRS § 701–109(4) in the following manner:

Under subsection (a), "an offense is included if it is impossible to commit the greater without also committing the lesser." *Burdett*, 70 Haw. at 87–88, 762 P.2d at 165–67 (citations omitted). In making this comparison, the degree of culpability, the legislative statutory scheme, and the end result may be considered. *Id.* at 88, 762 P.2d at 166 (citation omitted).

Regarding the degree of culpability, the rule is that the lesser included offense cannot have a mental state greater than or different from that which is required for the charged offense. *Id.* (citations omitted). . . .

. . . .

. . . [A] lesser included offense should produce the same end result as the greater charged offense. *Id.* . . .

. . . .

. . . Under subsection (c), an offense is included if "[it] differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person . . . or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission."[9]

"Subsection (c) differs from (a) in that there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same." *State v. Freeman*, 70 Haw. 434, 440, 774 P.2d 888, 892 (1989) (citing Commentary to HRS § 701–109). Under subsection (c) analysis, the following factors are considered: (1) the degree of culpability; (2) the degree or risk of injury; and (3) the end result. *Burdett*, 70 Haw. at 90, 762 P.2d at 167 (citation omitted). . . .

*Alston*, 75 Haw. at 533–36, 865 P.2d at 166–67 (emphasis omitted).

### D. The ICA Erred In Holding That Kinnane Was Not Entitled To An Included Offense Instruction Regarding Count I.

The ICA's rationale as to why the trial court did not err in refusing Defendant's Supplemental Jury Instruction No. 12 was as follows:

The trial court refused [Kinnane's] request to instruct the jury that if they were unable to reach a verdict on the charge of attempted sexual assault in the second degree, they should consider whether [Kinnane] was guilty of the included offense of attempted sexual assault in the fourth degree.[10]

[Kinnane] assigns the court's refusal as error. We find no error.

HRS § 701–109(5) (1985) provides that, [t]he court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

There was a rational basis in the evidence for acquittal of the charged offense

8. HRS § 701–109(4)(b) has significance in the matter before us. *See infra* note 10.

9. "Sexual contact," *see supra* note 3, is a "less serious injury," within the meaning of HRS § 701–109(4)(c), than "sexual penetration," *see supra* note 2.

10. Actually, inasmuch as the complainant testified that she felt Kinnane's hand under her panties, the trial court should have instructed the jury regarding the included offense of sexual assault in the fourth degree, as Kinnane originally requested, *see supra* note 5, as well as attempted

sexual assault in the fourth degree. This fact does not affect our analysis inasmuch as, for the reasons discussed below, sexual assault in the fourth degree, in violation of HRS § 707–731(1)(a), is "included in" the offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a), within the meaning of HRS § 701–109(4), and attempted sexual assault in the fourth degree is "of the same class and grade" as sexual assault in the fourth degree. *See* HRS § 705–502. Furthermore, attempted sexual assault in the fourth degree is an included offense of sexual assault in the fourth degree. *See* HRS § 701–109(4)(b).

of attempted sexual assault. The jury could have disbelieved [the complainant's] testimony that [Kinnane's] penis was rubbing on her stomach and that his hand was under her panties. In that case, however, there would have been no rational basis for convicting [Kinnane] of the lesser offense, since the only remaining testimony would be [Kinnane's] testimony that he never touched [the complainant] except when he kissed her stomach.

ICA's decision at 14–15 (footnote omitted).

The ICA's reasoning is faulty on at least three grounds. First, the "sexual contact," *see supra* note 3, of Kinnane's penis with the complainant's stomach was not a material element of the offense of attempted sexual assault in the second degree with which Kinnane was charged in Count I,[11] *see supra* note 2 and the discussion of material elements *infra* in section II.D.1 of this opinion, and the jury obviously found beyond a reasonable doubt that that particular sexual contact had taken place, inasmuch as it convicted Kinnane of sexual assault in the fourth degree as charged in Count II.[12] *See* the discussion of the material elements of sexual assault in the fourth degree *infra* in section II.D.1 of this opinion. Second, the jury could rationally have believed the complainant's testimony in its entirety and nonetheless acquitted Kinnane of attempted sexual assault in the second degree if it had a reasonable doubt as to whether, despite touching the complainant under her panties with his hand, Kinnane intended to penetrate the complainant's vagina with his fingers.[13] And third, the jury could rationally have believed the complainant's testimony in part and nonetheless acquitted the defendant of attempted sexual assault in the second degree if it had a

reasonable doubt both as to whether Kinnane succeeded in subjecting the complainant to sexual contact under her panties and as to whether Kinnane intended to penetrate the complainant's vagina with his fingers.

We thus reach the central questions presented by this appeal: (1) Had the jury acquitted Kinnane of attempted sexual assault in the second degree in violation of HRS §§ 705–500 and 707–731(1)(a), as charged in Count I, was there a rational basis in the evidence for convicting him of either sexual assault in the fourth degree in violation of HRS § 707–733(1)(a) or attempted sexual assault in the fourth degree in violation of HRS §§ 705–500 and 707–733(1)(a); and, (2) if so, neither sexual assault in the fourth degree nor attempted sexual assault in the fourth degree having been charged in Count I, would such convictions have been lawful? The answer to the first question turns on the respective elements of the three offenses. The answer to the second question turns on whether sexual assault in the fourth degree and attempted sexual assault in the fourth degree are "included in" the charged offense of attempted sexual assault in the second degree, within the meaning of HRS § 701–109(4). Accordingly, we address each question in turn.

### 1. *Elements of the offenses*

"HRS § 701–114(1)(a) and (b) (1985) requires proof beyond a reasonable doubt of each element of the offense, as well as the state of mind required to establish each element of the offense." *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *Kupau*, 76 Hawai'i at 390, 879 P.2d at 495) (citations and internal quotation marks omitted). "In addition, pursuant to

---

11. Count I, as clarified by the prosecution's bill of particulars, charged Kinnane with having "intentionally engage[d] in conduct, which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of Sexual Assault in the Second Degree, by knowingly attempting to subject [the complainant] to an act of sexual penetration by compulsion [*i.e.*, by attempting to insert his fingers into the complainant's vagina], thereby committing the offense of Attempted Sexual Assault in the Second Degree, in violation of [HRS §§] 705–500 and 707–731(1)(a)."

12. Count II charged Kinnane with having "knowingly subjecte[d] [the complainant], who was not his spouse, to sexual contact by compulsion or ... caus[ed] [the complainant] to have sexual contact with [him] by compulsion, by placing his penis on her stomach, thereby committing the offense of Sexual Assault in the Fourth Degree in violation of [HRS §] 707–733(1)(a)."

13. Note that the prosecution conceded in its bill of particulars that no "sexual penetration" occurred in this case, but rather alleged that Kinnane *attempted* to insert his fingers into the complainant's vagina. *See supra* note 2.

HRS § 702–205 (1985), the requisite state of mind applies to such conduct, attendant circumstances, and results of conduct as are specified by the definition of the offense." *Id.* (quoting *Kupau*, 76 Hawai'i at 390–91, 879 P.2d at 495–96) (citation, brackets, and internal quotation marks omitted).

A person commits the offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500(1)(b) and 707–731(1)(a), if the person intentionally engages in conduct, which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended or known to be practically certain to subject another person to an act of sexual penetration that the person is aware is by compulsion.[14]

Accordingly, there were two material elements of the offense of attempted sexual assault in the second degree as charged in Count I against Kinnane, each of which the prosecution was required to prove beyond a reasonable doubt in order to establish guilt.

These two elements were: (1) that Kinnane intentionally (*i.e.*, the requisite state of mind establishing attempt liability with respect to the actor's conduct) engaged in conduct; and (2) that the conduct, under the circumstances as Kinnane believed them to be: (a) constituted a substantial step in a course of conduct; (b) intended or known to be practically certain (*i.e.*, the requisite intentional or knowing state of mind with respect to the result of the actor's conduct); (c) to subject the complainant to an act of sexual penetration (*i.e.*, the result of the actor's prohibited conduct); (d) that Kinnane was aware (*i.e.*, the requisite knowing state of mind with respect to attendant circumstances); (e) was by compulsion (*i.e.*, the attendant circumstance of absence of the complainant's consent, *see supra* note 2). *See supra* note 14; HRS §§ 705–500(2), *supra* note 1, and 707–731(1)(a), *supra* note 2.

On the other hand, a person commits the offense of sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), if "the person knowingly subjects another person to

---

14. The commentary on HRS § 705–500, relating to the "nature of intent in attempt cases," states in relevant part:

In [HRS § 705–500(2),] liability is imposed on a defendant who has intentionally engaged in conduct which is a substantial step in a course of conduct intended or known to culminate in a prohibited result. Thus, a defendant who intends to destroy a building, and who regards the destruction of its inhabitants as a regrettable by-product, could be convicted of attempted murder ... if he [or she] intentionally performed a substantial step (e.g., started a fire) which he [or she] knew (i.e., was practically certain) would result in death. Attempt liability is provided for a defendant who engages in such conduct because his [or her] manifestation of dangerousness is of the same order as that of the defendant who engages in the intentional conduct of [HRS § 705–500(1)].

Subsection (2) also covers a relatively infrequent, but nonetheless troublesome, occurrence in attempt cases. A given crime may be so defined that the attendant circumstances may be established by a nonintentional state of mind (i.e., with respect to attendant circumstances the actor may act knowingly, recklessly, or negligently). If such is the case, and the defendant intentionally engages in conduct planned to culminate in the result, attempt liability should exist if the defendant was otherwise culpable with respect to the attendant circumstances. Suppose, for example, that it is an independent crime to intentionally kill a

police officer and that recklessness with respect to the victim's identity as a police officer is sufficient to establish that attendant circumstance. If a defendant attempts to kill a police officer recklessly mistaken as to the intended victim's identity (e.g., he [or she] recklessly believes [the officer] to be a night watchman), attempt liability ought to result. Subsection (2) so provides. It would hardly make sense to hold that the defendant should be relieved of attempt liability in the situation hypothesized because he [or she] did not intend that the victim be a policeman. Furthermore, it would be anomalous to hold that had the defendant succeeded, and the substantive crime been consummated, he [or she] would be guilty of the substantive crime but that, upon the failure of his attempt, his lack of intent with respect to an attendant circumstance precludes penal liability for the attempt.

HRS § 702–206 (1985) provides in relevant part:

**Definitions of states of mind.**

....

(2) "Knowingly."

....

(b) A person acts knowingly with respect to attendant circumstances when [the person] is aware that such circumstances exist.

(c) A person acts knowingly with respect to a result of [the person's] conduct when [the person] is aware that it is practically certain that [the person's] conduct will cause such a result.

sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion."

Accordingly, had the jury been so instructed in connection with Count I, there were three material elements of the offense of sexual assault in the fourth degree, each of which the prosecution would have been required to prove beyond a reasonable doubt in order to establish guilt. These three elements were: (1) that Kinnane subjected the complainant (*i.e.*, the prohibited conduct) to sexual contact (*i.e.*, the prohibited result of Kinnane's hand touching the complainant's "sexual or other intimate parts" under her panties and the attendant circumstance that the complainant was not married to Kinnane, *see supra* note 3); (2) that Kinnane did so by compulsion (*i.e.*, the attendant circumstance of absence of the complainant's consent, *see supra* note 2); and (3) that Kinnane did so knowingly (*i.e.*, the requisite state of mind).

Finally, a person commits the offense of attempted sexual assault in the fourth degree, in violation of HRS §§ 705–500 and 707–733(1)(a), if the person intentionally engages in conduct, which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended or known to be practically certain to subject another person to sexual contact that the person is aware is by compulsion.[15]

Accordingly, had the jury been so instructed in connection with Count I, there were two material elements of the offense of attempted sexual assault in the fourth degree, each of which the prosecution would have been required to prove beyond a reasonable doubt in order to establish guilt. These two elements were: (1) that Kinnane intentionally (*i.e.*, the requisite state of mind establishing attempt liability with respect to the actor's conduct) engaged in conduct; and (2) that the conduct, under the circumstances as Kinnane believed them to be: (a) constituted a substantial step in a course of conduct; (b) intended or known to be practically certain (*i.e.*, the requisite intentional or knowing state of mind with respect to the result of the

actor's conduct); (c) to subject the complainant to sexual contact (*i.e.*, the result of the actor's prohibited conduct and the attendant circumstance that the complainant was not married to Kinnane, *see supra* note 3); (d) that Kinnane was aware (*i.e.*, the requisite knowing state of mind with respect to attendant circumstances); (e) was by compulsion (*i.e.*, the attendant circumstance of absence of the complainant's consent, *see supra* note 2). *See supra* note 14; HRS §§ 705–500, *supra* note 1, and 707–733(1)(a), *supra* note 3.

As we have indicated, even if the jury had believed the complainant's testimony in its entirety, it could have acquitted Kinnane of attempted sexual assault in the second degree, as charged in Count I, on the basis of a reasonable doubt as to whether, despite having touched the complainant under her panties, Kinnane intended to insert his fingers into her vagina. The touching, however, clearly met the definition of "sexual contact." *See supra* note 3.[16] We therefore hold that there was a rational basis in the evidence for the jury to find beyond a reasonable doubt that Kinnane knowingly subjected the complainant to sexual contact by compulsion and thus to convict him of sexual assault in the fourth degree. Moreover, as we have indicated, the jury could have believed that Kinnane attempted, but failed, to subject the complainant to sexual contact. We therefore hold that there was a rational basis in the evidence for the jury to convict Kinnane of attempted sexual assault in the fourth degree.

2. *Sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), and attempted sexual assault in the fourth degree, in violation of HRS §§ 705–500 and 707–733(1)(a), are "included in" the charged offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a), within the meaning of HRS § 701–109(4)(c)*

We turn now to the question whether sexual assault in the fourth degree, in violation of

---

**15.** *See supra* note 14.

**16.** We note that, by virtue of its guilty verdict with respect to sexual assault in the fourth de-

gree as charged in Count II, the jury, of necessity, found beyond a reasonable doubt that the complainant was not married to Kinnane.

HRS § 707–733(1)(a), and attempted sexual assault in the fourth degree, in violation of HRS §§ 705–500 and 707–733(1)(a), are included offenses of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a), within the meaning of HRS § 701–109(4).[17]

Pursuant to HRS § 701–109(4)(a), an uncharged offense is included within a charged offense if the former "is established by proof of the same or less than all of the facts required to establish the commission" of the latter. Put differently, the uncharged offense is an "included" offense under HRS § 701–109(4)(a) if it is impossible to commit the charged offense without also committing the uncharged offense. *Alston*, 75 Haw. at 533, 865 P.2d at 166.

It is possible to commit the offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a), without also committing the offense of sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), under at least two sets of circumstances. First, a person can attempt to subject "another person" to an act of sexual penetration without actually making sexual contact. Second, *all* acts of sexual contact are not subsumed within *all* acts of sexual penetration. "Sexual penetration" by "compulsion," as defined by HRS § 707–700, *see supra* note 2, is criminalized by HRS § 707–731(1)(a) when perpetrated against *any* other person. By contrast, "sexual contact" by "compulsion," within the meaning of HRS § 707–733(1)(a), can only be committed against "a person not married to the actor." *See* HRS § 707–700, *supra* note 3. That being the case, sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), cannot be established by proof of the same or less than all the facts required to establish the commission of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–

733(1)(a), and it is possible to commit the latter without also committing the former.

Accordingly, we hold that neither sexual assault in the fourth degree nor attempted sexual assault in the fourth degree are included offenses of attempted sexual assault in the second degree, within the meaning of HRS § 701–109(4)(a).

■ HRS § 701–109(4)(c), however, differs from HRS § 701–109(4)(a) "in that there may be some dissimilarity in the facts necessary to prove the lesser offense, but the end result is the same." *Alston*, 75 Haw. at 536, 865 P.2d at 167; *Freeman*, 70 Haw. at 440, 774 P.2d at 892; commentary to HRS § 701–109. Under subsection (c), an offense is included if it "differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person … or a different state of mind indicating lesser degree of culpability suffices to establish its commission." And as we have indicated, "[u]nder a subsection (c) analysis, the following factors are considered: (1) the degree of culpability; (2) the degree or risk of injury; and (3) the end result." *Alston*, 75 Haw. at 536, 865 P.2d at 167. *See also Burdett*, 70 Haw. at 90, 762 P.2d at 167.

Inasmuch as the requisite state of mind of attempted sexual assault in the second degree is a combination of intent and knowledge, *see* section II.D.1 of this opinion, and the requisite state of mind of sexual assault in the fourth degree is knowledge, *see id.*, it follows that sexual assault in the fourth degree entails "a different state of mind indicating lesser degree of culpability" than attempted sexual assault in the second degree "to establish its commission." *See State v. Feliciano*, 62 Haw. 637, 639, 618 P.2d 306, 308 (1980); commentary on HRS § 702–208 (1985) ("[I]ntent, knowledge, recklessness, and negligence are in a descending order of culpability[.]").[18]

---

17. If sexual assault in the fourth degree is an included offense of attempted sexual assault in the second degree, then attempted sexual assault in the fourth degree must be as well, inasmuch as, pursuant to HRS § 701–109(4)(b), an attempted sexual assault is an included offense of the sexual assault itself. *See supra* note 10.

18. Of course, attempted sexual assault in the second degree and attempted sexual assault in the fourth degree share the same combination of requisite states of mind. *See* section II.D.1 of this opinion.

**56**

Likewise, "sexual contact" (*i.e.*, "any touching of the sexual or other intimate parts of a person," *see supra* note 3) is "less serious" than the risk of "sexual penetration" (*i.e.*, "any intrusion of any part of a person's body ... into the genital ... opening of another person's body," *see supra* note 2). Thus, sexual assault in the fourth degree envisions a less serious injury or risk of injury than attempted sexual assault in the second degree to establish its commission. *See Woicek,* 63 Haw. at 552, 632 P.2d at 657 (ruling that seriousness of injury or risk of injury is generally measured by relative grade or degree of offenses involved).

Finally, the end results of attempted sexual assault in the second degree and sexual assault in the fourth degree are the same. "In both instances the victim ... is placed in jeopardy of being injured or is being injured by [the defendant's] conduct." *Feliciano,* 62 Haw. at 639, 618 P.2d at 308. *See also Alston,* 75 Haw. at 535, 865 P.2d at 166–67 (observing that legislative classification of offenses proscribing "personal injury" creates a distinct end result).

Thus, sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), satisfies the prerequisites of HRS § 701–109(4)(c) regarding lesser seriousness of injury or risk of injury, lesser degree of culpability, and identity of end results so as to qualify it as an included offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a). That being the case, and attempted sexual assault in the fourth degree being an included offense of sexual assault in the fourth degree pursuant to HRS § 701–109(4)(b), we therefore hold that sexual assault in the fourth degree and attempted sexual assault in the fourth degree are included offenses of attempted sexual assault in the second degree, within the meaning of HRS § 701–109(4)(c).

III. *CONCLUSION*

Because sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a), and attempted sexual assault in the fourth degree, in violation of HRS §§ 705–500 and 707–733(1)(a), are included offenses of the charged offense of attempted sexual assault in the second degree, in violation of HRS §§ 705–500 and 707–731(1)(a), we hold that the circuit court erred in refusing, over Kinnane's objection, to instruct the jury with respect to them. We therefore vacate Kinnane's conviction in Count I and remand the matter to the circuit court for further proceedings consistent with this opinion. In all other respects, we affirm the ICA's decision.